UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| JEREMIAH WALDROP, and <br> PHILLIP SELF, as individuals, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON CITY, TENNESSEE, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 2:19-cv-00103-JRG-CRW <br> ) JURY DEMAND <br> ) <br> ) <br> ) |

### ANSWER OF THE CITY OF JOHNSON CITY, TENNESSEE TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Comes now the City of Johnson City, Tennessee ("Johnson City") and responds to the plaintiffs' First Amended Complaint ("Complaint") [Doc. 72] filed against it and would answer as follows:

### **FIRST DEFENSE**

1. The nature of the plaintiffs' Complaint is noted, but denied that deprivations have occurred as a result of the actions of this responding defendant such that the plaintiffs are entitled to the relief requested.

2. It is denied that on September 15, 2018, the plaintiffs were threatened with arrest pursuant to the City's "Special Event Policy, Procedure and Application." To the City's knowledge, the only officer who cautioned as to the possibility of arrest was Lt. Peters as alleged in paragraph 100. Lt. Peters' action was taken pursuant to instructions given by senior Police Department officials on the day of the TriPride event. The authority for giving those instructions was that TriPride had obtained a permit to use Founders Park for a limited period of time on September 15, 2018 to hold a Festival. It is denied that the City of Johnson City had any legal duty

1

to provide training to the officers beyond the training required by Tennessee law. Any additional allegation sought to be asserted in Paragraph two (2) of the Complaint is denied.

3. The plaintiffs' announcement challenging the City of Johnson City's training practices and customs is noted.

4. The plaintiffs' announcement challenging the City's policies, or its employees conduct on September 15, 2018 is noted.

5. The allegations in Paragraph 5 are admitted.

6. The allegations in Paragraph 6 are admitted.

7. The allegations contained in Paragraph seven (7) of the Complaint are admitted in part and denied in part.

With respect to the allegations in the first two sentences, it is admitted that the City of Johnson City ("City" or "Johnson City") is a duly incorporated municipality in and of the State of Tennessee and has the ability to sue and be sued. The City of Johnson City, by way of its governing board, the Johnson City City Commission, is acknowledged to have all the necessary authority to operate and pass policies relevant to the operation of a municipality, but denied the governing board adopted the Special Event Policy which is the subject of this litigation. Moreover, the City's Special Event Policy does not address or control the circumstances that arose related to the plaintiffs.

With respect to the allegations in the third sentence, the Johnson City officers working the September 15, 2018 TriPride Parade and Festival had all of the training required by Tennessee law. The officers who interacted with the plaintiffs related to complaints from TriPride representatives were following the instructions given to them in a briefing at the Johnson City Police Department the morning of the event. Officers are not interpreting, enforcing, or applying

2

the Special Events Policy and were not trained on the Policy.

With respect to the allegations in the fourth sentence, those allegations are denied to the extent that the plaintiffs are alleging that every action of an officer is an action of the City.

With respect to the allegations in the fifth sentence, those allegations are denied as stated. It is admitted that the City is the employer of the named officers and any other Johnson City officers who were working the September 15, 2018 TriPride Parade and Festival. It is admitted that Johnson City is responsible for the training of its officers.

With respect to the allegations in the sixth sentence, Johnson City denies that the actions of its officers on September 15, 2018 were unlawful.

With respect to the allegations in the seventh sentence, it is denied that Johnson City has ratified an unlawful interpretation, enforcement, or application of the Policy. This is a legal concept that is inapplicable to this action because this theory would only apply where there was a repeated history of unconstitutional conduct known to City decisionmakers prior to September 15, 2018.

With respect to the allegations in the eighth sentence, it is denied that Johnson City is defending an unlawful position and denied that Johnson City will not abide by any final judgment in this action.

8. The nature of the plaintiffs' Complaint is noted, but it is denied this responding defendant violated the plaintiffs' constitutional rights or that they are entitled to the relief sought.

9-10. Jurisdiction before this Court is admitted.

11. Admitted that this Court may exercise supplemental jurisdiction over state law claims, but denied that it should exercise such jurisdiction until such time as the federal claims are first addressed.

12. Admitted this Court's authority encompasses the granting of declaratory judgments

3

Case 2:19-cv-00103-JRG-CRW   Document 75   Filed 09/16/20   Page 3 of 20   PageID #: 979

and preliminary and permanent injunctions, but it is denied that this case necessitates this Court's need to exercise such authority.

13. Admitted this Court has the authority to grant awards and remedies to persons where constitutional rights are proven to have been violated, but it is denied that the plaintiffs are entitled to any of the relief sought.

14-15. Venue is stipulated to be proper.

16. Upon information and belief, admitted.

17. Upon information and belief, admitted.

18. Plaintiffs purported reasons for bringing this action are noted, but it is denied that this responding defendant violated the rights of the plaintiffs.

19. Admitted that public spaces such as parks, public streets, public sidewalks, and public rights-of-way can serve as traditional public fora depending on the time, place, and manner of the intended use.

20. Admitted that public spaces may be utilized for various activities subject to certain time, place, and manner limitations.

21. Upon information and belief, admitted.

22. The allegation is neither admitted nor denied due to a lack of sufficient knowledge or information.

23. The allegations in paragraph 23 are admitted in part and denied in part. It is admitted that the plaintiffs were not encouraging violence. But some of the comments by the plaintiffs and/or their associates were vile and harassing in nature towards TriPride attendees. While vile and harassing comments are generally entitled to First Amendment protection, TriPride officials reasonably could have concluded that such comments were interfering with TriPride's own

4

expressive message during the limited period of time that it controlled the footprint of the reserved space.

24. The plaintiffs' level of desire to engage in peaceful activities is incapable of being known to this responding defendant and the allegations contained in Paragraph twenty-four (24) of the Complaint are neither admitted nor denied.

25. This responding defendant is without sufficient knowledge or information to admit or deny the various ways the plaintiffs may attempt to share their faith.

26. This responding defendant is without sufficient knowledge or information to admit or deny the plaintiffs' activities directed to a distribution of free literature, but it is admitted that the plaintiffs or those accompanying the plaintiffs do on occasion carry portable signs.

27. Admitted.

28. This responding defendant is without sufficient knowledge to admit or deny if the plaintiffs engage with others in the manner described in Paragraph twenty-eight (28) of the Complaint except and to the extent that the video recording made by the plaintiffs on September 15, 2018 shows the plaintiffs and/or their associates engaging in discussions that were not respectful.

29. This responding defendant is incapable of verifying any religious mandate the plaintiffs may have or the source of such mandate with respect to their use of public spaces in Johnson City.

30. This responding defendant is not familiar with or have information related to the planned activities of the plaintiffs and any constitutional-protected activities within Johnson City's public spaces and therefore cannot admit or deny the allegations.

31. Denied.

5

32. Admitted to the extent it is consistent with the answer to Paragraph seven (7) of the Complaint.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. As an initial matter it is denied the allegations in Paragraphs thirty-seven (37) through forty-nine (49) rise to a level of a pattern or practice creating municipal liability under Section 1983. It is admitted Plaintiff Waldrop was "peaceful" when he was on a public sidewalk outside Rotary Park on September 7, 2014.

38. It is admitted that at approximately 2:35 p.m. Sergeant Mominee arrived on scene where Plaintiffs Waldrop and Self and others were preaching from a sidewalk with amplification toward a gathering of TriPride attendees in Rotary Park. It is denied four (4) officers arrived on scene.

39. Denied.

40. Denied, as stated.

41. Denied, as stated.

42. Denied as stated, but admitted Sergeant Mominee cautioned Plaintiffs Waldrop and Self and their associate that they would be issued a citation if they continued to use amplification or yelling targeting the TriPride meeting or gathering so as to disrupt it in violation of Tenn. Code Ann. § 39-17-306.

43. Admitted that Sergeant Mominee returned with a TriPride representative in an attempt to reach an acceptable final resolution of the matter to include avoidance of future conflicts

6

between those involved. The attempt was not successful. The remaining allegations in Paragraph forty-three (43) of the Amended Complaint are denied.

44. It is admitted that Plaintiffs Waldrop and Self and their associate elected to leave the sidewalk even though it was clear to them that they could continue preaching so long as amplification or yelling was not employed.

45. The letter sent to then Chief of Police Sirois dated October 15, 2014 conveyed inaccurate facts and inaccurately implied that Waldrop's constitutional rights had been violated and therefore the allegation is denied as stated.

46. Admitted.

47. Admitted that such a letter was sent, but denied the letter contained accurate information.

48. It is admitted that on September 3, 2015 legal counsel for the City responded to an American Liberties Institute letter acknowledging the free speech rights of Plaintiff Waldrop and welcoming his continued exercise of those rights consistent with existing law.

49. The allegations contained in paragraph forty-nine (49) of the Amended Complaint cannot be verified because former Chief Sirois' deposition has not been received, though timely requested. Therefore, the allegation is neither admitted nor denied

50. Admitted.

51. Admitted.

52. Admitted.

53. Admitted with the exception that it was the Johnson City Development Authority (JCDA) that initially approved TriPride's application for a Festival in Founders Park.

54. Admitted.

7

55. Admitted.

56. Admitted with the exception that TriPride was given control over who entered the Festival area.

57. Admitted, but all members of the public were required to pass through security checkpoints to reach the TriPride Festival area as well as other sections of a designated secured area around Founders Park.

58. Admitted.

59. Admitted with the exception that during the limited time of the Festival, TriPride was given control over who entered the Festival area.

60. Denied.

61. Denied as stated. Ms. Keenan testified: "Exclusive would be a ticketed event where the individuals are paying for an event that is ticketed." Also, "and then "exclusive' event can also be a private event, whether it's ticketed or not ticketed.'" Ms. Keenan did not classify the TriPride Festival permit as "non-exclusive."

62. Denied. Ms. Keenan testified: "And a "non-exclusive" event would be open to the public and not a ticketed event."

63. Admitted that the deposition testimony quoted is accurately reflected in Paragraph sixty-three (63) of the Complaint, but denied that this testimony supports plaintiffs' position that TriPride was prohibited from excluding persons who were disruptive to its expressive message.

64. Admitted that the deposition testimony is accurately quoted, but denied that the interpretation of TriPride's control of attendees to the Festival was limited to security, but rather the City provided adequate security in light of threats received so as to allow TriPride to conduct its Festival for the purposes for which it had submitted an application.

65. Admit that Brian Rice testified, "Well, I think in itself, no, sir, we would not." And therefore, the allegation is denied as stated.

66. Admit that Brian Rice agreed with the statement that "no one should be removed from Founders Park unless they were a security threat."

67-70. The allegations contained in paragraphs sixty-seven (67) through seventy (70) of the Amended Complaint cannot be verified because the transcript of the Kenn Lyon deposition taken on July 1, 2020 has yet to be received. Therefore, the allegations are neither admitted nor denied.

71. Admitted.

72. Admitted that the testimony quoted in Paragraph seventy-two (72) of the Amended Complaint is accurate and further admitted TriPride's president did not request the removal of an individual expressing a contrary viewpoint to LGBT issues because the person was engaging in a civil, non-disruptive, respectful conversation.

73. Admitted.

74. Admitted in part and denied in part. Admitted after the parade was complete, certain streets were opened to vehicular traffic. It is admitted that the initial security perimeter around the "event" was reduced, but it is denied that the TriPride Festival included any area other than that identified in the application and site plans, including the closure of a portion of Commerce Street adjacent to the sidewalk where the plaintiffs were located for several hours.

75. Admitted.

76. Admitted.

77. Admitted.

78. Admitted.

79. Denied as stated. The Johnson City law enforcement officers were instructed that TriPride had rented Founders Park and could restrict who enters the Festival area – meaning only the area within Founders Park, not the "event" area within the security perimeter.

80. Denied that TriPride was instructed that its control of the space it had rented was limited to a security threat or that the involved law enforcement officers were improperly instructed.

81. Denied that TriPride's control was restricted in any way that would limit its First Amendment rights to conduct its Festival for the purposes reflected in its application approved by the City or that the involved law enforcement officers were improperly trained or instructed.

82. It is denied that TriPride representatives were present or involved or requested to be at the security perimeter checkpoints.

83. It is admitted that TriPride did not post any representative at the security checkpoints in the security perimeter where access to the event area was determined.

84. It is admitted the plaintiffs went through a security checkpoint, but thereafter were free to go within the perimeter of the boundaries established by the checkpoints that included an area much larger than the public park where the TriPride Festival was being held.

85-86. The allegations in paragraphs 85 and 86 are admitted with the exception that TriPride had reserved Founders Park, TriPride had its own expressive message, and TriPride was entitled to control its expressive message during the limited period of time it had reserved Founders Park.

87. The allegations in paragraph 87 are admitted with the exception that TriPride had reserved Founders Park, TriPride had its own expressive message, and TriPride was entitled to control its expressive message during the limited period of time it had reserved Founders Park.

88. Deny the allegations to the extent that the video recordings show the plaintiffs and their associates activities directed to the Festival attendees.

89. Deny the allegations to the extent the video recordings show the plaintiffs and their associates activities directed to the Festival attendees.

90. Admitted in part, denied in part. Captain Rice did not observe the plaintiffs except when they were on the sidewalk adjacent to the closed section of Commerce Street and concluded that from that location the plaintiffs were not unduly interfering with the Festival activities.

91-92. With respect to the allegations in paragraphs 91 and 92, Plaintiff Self was in the Festival area peacefully discussing his message one-on-one, handing out religious literature and voluntarily came outside to where Plaintiff Waldrop and his associates were located. The plaintiffs and their associates thereafter were engaging Festival attendees from a grassy embankment when they were directed to move six (6) to eight (8) feet to a sidewalk on the perimeter of Founders Park, but within the footprint of the Festival area reserved by TriPride and for which a permit had been issued. It is denied that other than Self, that the plaintiff and his associates attempted to peacefully walk through Founders Park before or after they were directed to stay on the sidewalk which was adjacent to Commerce Street which was closed as a part of the Festival.

93. It is admitted that Plaintiff Self was not using an amplification device when he was peacefully and in a non-disruptive manner walking through the TriPride Festival in Founders Park handing out religious literature, but it is denied that Plaintiff Waldrop or his other associates at any time attempted to walk through the TriPride Festival area in Founders Park with or without amplification.

94. Denied as stated, the plaintiffs remained within the Festival footprint.

95-97. It is denied that the plaintiffs were removed from Founders Park while they were

attempting to walk through Founders Park, but admitted the plaintiffs were directed to move from their location on a grassy strip approximately six (6) to eight (8) feet to a sidewalk adjacent to Commerce Street which was closed and was within the TriPride Festival footprint.

98. It is admitted that Lt. Peters told the plaintiffs if they went further into Founders Park from the sidewalk and from which they were engaging Festival attendees that they would be cited.

99. Admitted.

100. Admitted.

101. It is admitted that Lt. Peters directed the plaintiffs to move to a sidewalk on the perimeter of Founders Park adjacent to Commerce Street, which was closed, but within TriPride's Festival footprint for which TriPride had received a permit.

102-107. Upon information and belief, admitted.

108. Denied.

109. Denied as stated, but admitted that Sgt. Hodges confirmed for former Plaintiff Fisher that Fisher was correct that they would not be allowed to take their signs on poles through the security checkpoints into the event area.

110. Admitted.

111. Admitted.

112. Denied to the extent that it is alleged that Captain Rice was interpreting the Special Events Policy.

113. Denied in part and admitted in part. A TriPride representative did ask Captain Rice to move the plaintiffs and their associates from their position at the perimeter of Founders Park, but within the Festival footprint. Captain Rice concluded the plaintiffs and their associates were

12

not unduly interfering with TriPride's Festival activities from that location.

114. The allegations in paragraph 114 are denied. Sgt. Hodges moving of the plaintiffs and their associates – along with another group – from the railroad's right-of-way was unrelated to any instructions given to the officers related to the September 15, 2018 TriPride Festival. The officers who advised the plaintiffs that TriPride did not want them in the Festival area were acting pursuant to instructions given by senior police officials that "TriPride committee members have rented Founder's Park and can restrict who enters the main Festival area." Johnson City admits that this instruction is deemed the policy of the City for this event on September 15, 2018. Johnson City denies that there was any constitutional duty to provide training on this instruction given one time for one event.

115. The allegations in paragraph 115 are denied as stated. To the City's knowledge, the only officer who cautioned as to the possibility of arrest was Lt. Peters as alleged in paragraph 100. Lt. Peters' action was taken pursuant to instructions given by senior Police Department officials on the day of the TriPride event. However, it is admitted that the authority for giving such an instruction was that TriPride had obtained a permit to use Founders Park for a limited period of time on September 15, 2018 to hold a Festival for the purposes contained in its applications which had been approved by the City.

116-118. The allegations in paragraphs 116, 117, and 118 are denied as stated. The City's position is that the plaintiffs' First Amendment rights were complied with by allowing them to engage with the Festival attendees, with amplification, from the sidewalk at the edge of Founders Park within the Festival's footprint for which TriPride had obtained a permit.

119-120. The City objects to the plaintiffs asserting in a Complaint discussions of settlement in violation of Federal Rule of Evidence 408. Without waiving that objection, the

13

Case 2:19-cv-00103-JRG-CRW   Document 75   Filed 09/16/20   Page 13 of 20   PageID #: 989

allegations are admitted.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

125. Denied.

126. Denied that any Equal Protection Clause claim has been asserted. The original Complaint did not contain any such claim, and the plaintiffs represented to the Court in their Motion to Amend their Complaint that they were not asserting any new legal claims.

127-128. Admitted to the extent that the plaintiffs were advised with the possibility of a citation or arrest based on the City's instruction to its officers that "TriPride committee members have rented Founder's Park and can restrict who enters the Festival area."

129. Denied. As shown on the video, the plaintiffs and their associates were attempting to engage in public humiliation of others.

130. Denied. As shown on the video, the plaintiffs and their associates were attempting to engage in public embarrassment of others.

131. Denied.

132. Denied.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

138.     Denied.

139.     Denied.

140.     This responding defendant is without knowledge or information to admit or deny the future intentions of the plaintiffs.  It is denied that the Special Event Policy or any policy, practice or procedure of the City impairs the plaintiffs' constitutional rights.

141.     Denied.

142.     Denied.

143.     Denied.

144.     Denied.

145.     Admitted, including the protection of the free speech rights of any group who has reserved a limited space for a limited time and obtained a permit for purposes of conveying their own expressive message.

146.     Denied.

147.     Denied.

148.     Denied.

149.     Denied.

150.     Denied.

151.     Denied.

152-153.     Denied. The City's obligation was to provide any training required under Tennessee law or any remedial training in the event that repeated violations of the law had become apparent to City administrators so as to put the City on notice of the need for particularized remedial training.

154.     Denied.

155. There are no conditions precedent to bringing this action.

156. Denied.

157. The responses and defenses heretofore made are incorporated by reference as a response to Paragraph 157 of the Complaint.

158. Admitted.

159. Denied.

160. The allegations of paragraph 160 are denied except and to the extent that it is admitted that the officers were acting under color of law.

161. Denied.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

170. The responding defendant's answers and defenses heretofore asserted to Paragraphs one (1) through one hundred fifty-six (156) of the Complaint are incorporated here by reference.

171. Admitted.

172. This responding defendant is without sufficient knowledge or information to admit or deny the plaintiffs' shared beliefs and mandates or their purpose in engaging in certain activities.

Any remaining allegations contained in Paragraph one hundred seventy-two (172) of the Complaint are denied.

173. This responding defendant is without sufficient knowledge or information to admit or deny the guidance the plaintiffs contend they receive to engage in their activities.

174. Denied.

175. The allegations of paragraph 175 are denied except and to the extent that it is admitted that the officers were acting under color of law.

176. Denied.

177. Denied.

178. Denied.

179. Denied.

180. Denied.

181. Denied.

182. Denied.

183. Denied.

184. Denied.

185. Denied.

186. Denied.

187. This responding defendant's responses and defenses heretofore asserted in Paragraphs one (1) through one hundred fifty-six (156) of the Complaint are here incorporated by reference.

188. Denied.

189. Denied.

190. Denied.

191. Denied.

192. Denied.

193. Denied.

194. Denied.

195. Denied.

196. Denied.

197. This responding defendant's responses and defenses heretofore asserted in Paragraphs one (1) through one hundred fifty-six (156) of the Complaint are incorporated here by reference.

198. Denied as stated. Further, to the extent plaintiffs are asserting that Tennessee's Religious Freedom Restoration Act ("RFRA") prohibits the City or its officers from protecting the expressive message of TriPride, such assertion would violate the First Amendment to the United States Constitution. Finally, the RFRA is inaccurately cited in Paragraph one hundred ninety-eight (198) of the Complaint.

199. This responding defendant is without sufficient knowledge or information to admit or deny the plaintiffs' shared beliefs and mandates or their purpose in engaging in certain activities. Any remaining allegations contained in Paragraph one hundred ninety-nine (199) of the Complaint are denied.

200. This responding defendant does not question the sincerely held religious beliefs of the plaintiffs.

201. Denied.

202. This responding defendant does not question the sincerely held religious beliefs of

18

the plaintiffs.

203. Denied.

204. Denied.

205. Denied.

206. Denied.

207. Denied.

208. Denied.

209. Denied.

210. Denied.

211. Denied.

212. Denied.

213. All allegations express or implied not heretofore expressly admitted are here generally denied.

214. Plaintiffs request for a trial by jury is noted. Defendant also demands a trial by jury.

215. It is denied the plaintiffs are entitled to any relief from this responding defendant.

Respectfully submitted,

*s/K. Erickson Herrin*
K. Erickson Herrin, BPR # 012110
**HERRIN, McPEAK & ASSOCIATES**
P. O. Box 629
Johnson City, TN 37605-0629
Phone: (423) 929-7113
Email: lisa@hbm-lawfirm.com

*s/ Thomas J. Garland, Jr.*
Thomas J. Garland, Jr., BPR # 011495

**MILLIGAN & COLEMAN PLLP**
P.O. Box 1060
Greeneville, TN 37744-1060
Phone: (423) 639-6811
Email: tgarland@milligancoleman.com

*Counsel for Defendant, Johnson City, Tennessee*